IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TRACY DIANE HAYNES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:11-CV-3856-VEH |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Tracy Diane Haynes, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for disability insurance benefits and Supplemental Security Income. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I. STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this

court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id.* Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Id.*

Unlike the deferential review standard applied to the Commissioner's factual findings, the Commissioner's conclusions of law are not presumed to be valid. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Therefore, the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991.) This includes the Commissioner's application of the proper legal standards in evaluating Plaintiff's claim. *Martin*, 894 F.2d at 1529.

## II.  STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish entitlement for a period of disability, a claimant must be disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Social Security regulations outline a five-step process that is used to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently engaged in substantial gainful activity;

    (2)    whether the claimant has a severe impairment or combination of impairments;

    (3)    whether the claimant's impairment meets or equals the severity of an impairment in the Listing of Impairments;[1]

    (4)    whether the claimant can perform any of his or her past work; and

    (5)    whether there are significant numbers of jobs in the national economy that the claimant can perform.

*Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178 (11th Cir. 2011). The evaluation process continues until the Commissioner can determine whether the claimant is disabled.

---

[1] The Listing of Impairments, ("Listings") found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are used to make determinations of disability based upon the presence of impairments that are considered severe enough to prevent a person from doing any gainful activity.  20 C.F.R. § 404.1525.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who is doing substantial gainful activity will be found not disabled at step one. 20 C.F.R. §§ 404.1520 (a)(i), 416.920(a)(4)(i). A claimant who does not have a severe impairment will be found not disabled at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant with an impairment that meets or equals one in the Listing of Impairments will be found disabled at step three. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Prior to considering steps four and five, the Commissioner must assess the claimant's residual functional capacity (RFC), which will be used to determine the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who can perform past relevant work will be found not disabled at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five the burden shifts to the Commissioner to show other work the claimant can do. *Foot v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). To satisfy this burden the Commissioner must produce evidence of work in the national economy that the claimant can do based on the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f). A claimant who can do other work will be found not disabled at step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v). A claimant who cannot do other work will be found disabled. *Id.*

In the present case, the Administrative Law Judge (ALJ) determined Plaintiff was not engaged in substantial gainful activity, and found she had the severe impairments of "degenerative disk disease; rotator cuff disease; as suspected, and peripheral neuropathy of

left shoulder." R. 29.  The ALJ concluded she did not suffer from a listed impairment.  R. 36.  The ALJ found Plaintiff had the residual functional capacity (RFC) to perform "sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) which allows for a sit/stand option with no overhead reaching; no pushing or pulling movements involving the upper extremities; no climbing; and no driving, with occasional bending, stooping, and turning of the head, left to right."  R. 36.  With this RFC, the ALJ found Plaintiff unable to perform her past relevant work.  R. 36.

When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids) to establish the presence of other jobs at step five.[2]  *Foote*, 67 F.3d at 1558-59.  The presence of a non-exertional impairment (such as pain, fatigue, or mental illness) also prevents exclusive reliance on the grids.  *Id.* at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony."  *Id.*  Based on Plaintiff's RFC and the testimony of a vocational expert (VE), the ALJ found she could perform other work in the national economy.  R. 36, 85-93.  Therefore, the ALJ found Plaintiff was not disabled at step five of the sequential evaluation framework.  R. 36.

---

[2]   The Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform his vocationally relevant past work.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).  Such determinations, however, are only conclusive when all of the criteria of a particular rule are met.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

### III.  FACTUAL BACKGROUND

Plaintiff filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income (SSI) on April 29, 2008.  R. 20.  She alleges she became disabled on February 28, 2008.  R. 20.  Plaintiff was 39 years old at the time of the ALJ's decision. R. 36. She has a  limited education, and past relevant work as a janitor, sales person, school cook, and nurse's aid. R. 34, 36.  Plaintiff testified she could no longer perform her job as a certified nursing assistant because she was unable to lift with her arms because of shoulder problems.  R. 58.  She also testified she had problems with grasping and numbness in her hands; difficulty turning her neck from side to side; and reaching overhead.  R. 61-65.  She testified that her pain and medications side effects required her to lie down for most of the day.  R. 71.

The medical records show Plaintiff was treated for a variety of medical problems prior to her alleged onset date. R. 254-338.  The first treatment note after Plaintiff's alleged onset date was from an emergency department visit on April 29, 2008.  R. 344-346.  Plaintiff complained of pain in her neck and left arm "for at least several months."  R. 344.  She was found to have decreased strength in her left arm, but sensation was okay.  R. 345.  An x-ray of the cervical spine was ordered, which showed the disc spaces were preserved and that the facet relationships were normal.  R. 346.  The x-ray also showed the right cervical rib and a "slight reversal of the normal cervical curvature, a nonspecific finding."  R. 346.  The impression was "nonspecific reversal of the normal cervical curvature" and

6

"[r]ight cervical rib." R. 346. Plaintiff was diagnosed with cervical radiculopathy and given prescriptions for Robaxin[3] and tramadol.[4] R. 345.

On August 14, 2008, Plaintiff was again seen in the emergency department. She complained of a two day history of numbness of the left face, neck, shoulder, lateral chest, and entire left arm. R. 351. A CT scan of the head showed no abnormalities. R. 358. Plaintiff's diagnosis was "numbness." R. 352.

On August 29, 2008, Plaintiff was referred to Dr. Hakima by the Social Security Administration for a consultative physical examination. R. 361-64. Plaintiff reported a history of intermittent problems with her left arm since 2007, but constant numbness in the left arm for the previous two weeks. R. 361. On physical examination, Plaintiff had no problem getting on and off the exam table. R. 362. Dr. Hakima noted Plaintiff became "tearful during the exam, due to pain." R. 362. Dr. Hakima found Plaintiff had reduced grip strength in her left hand, and could only handle a doorknob with her right hand. R. 362. Dr. Hakima noted Plaintiff could not squat or bear weight on her left leg. R. 363. However, she found no disturbance to Plaintiff's gait. R. 363. Dr. Hakima found "multiple paravertebral muscle spasms in the cervical, thoracic and lumbar area with trigger point tenderness in all areas." R. 363. There was mild tenderness and effusion present in

---

[3] Robaxin (methocarbamol) is a muscle relaxant. http://www.drugs.com/robaxin.html

[4] Tramadol (Ultram) is a narcotic-like pain reliever used to treat moderate to severe pain. http://www.drugs.com/tramadol.html

Plaintiff's left knee. R. 363. Plaintiff was found to have decreased grip strength in the left hand at 3/5, but adequate muscle bulk, tone, and strength in the upper and lower extremities. R. 363. Pin prick and light touch sensation in Plaintiff's left upper extremity were both decreased. R. 363. Dr. Hakima found Plaintiff's deep tendon reflex was "zero degrees with the left upper extremity." R. 364. Dr. Hakima diagnosed the following:

(1)   Peripheral neuropathy involving left upper extremity, etiology unclear, but suspect cervical radiculopathy.

(2)   Degenerative disc disease of the lumbar spine.

(3)   Degenerative disc [sic] of the cervical spine.

(4)   Rotator cuff disease, as suspected in both shoulders.

R. 364.

On October 16, 2008, Plaintiff was seen at Birmingham Health Care by Dr. Jarmon's nurse practitioner. R. 383. Plaintiff reported pain in multiple joints, and that she had not had any pain medications for a while. R. 383. On physical examination, Plaintiff had difficulty making a fist. R. 383. The diagnoses included arthritis and multi-joint pain. R. 383. Lab work was ordered, and prescriptions were given for Ultram and Robaxin. R. 383. On October 20, 2008, Plaintiff was called to discuss her lab results. R. 382. She reported she was having pain but Ultram caused severe dizziness. R. 382. On October 21, 2008, Plaintiff's pain medication was changed to Mobic.[5] R. 382. When Plaintiff was seen by Dr.

---

[5] Mobic (meloxicam) is a nonsteroidal anti-inflammatory drug (NSAID). http://www.drugs.com/mobic.html

Jarmon on November 14, 2008, she reported a two day history of umbilical pain. R. 380. She also asked Dr. Jarmon to complete a food stamp form. R. 380. On the form, Dr. Jarmon indicated Plaintiff was mentally and physically able to work. R. 381.

Plaintiff next saw Dr. Jarmon on February 19, 2009, complaining of knee pain and a sinus infection. R. 379. On February 26, 2009, Plaintiff called Dr. Jarmon's office complaining of leg pain and being unable to walk. R. 378. Dr. Jarmon advised Plaintiff to go to the emergency room. R. 378. However, there is no record of any emergency room visit. On April 23, 2009, Plaintiff requested a refill of allergy medicines. R. 377.

On June 8, 2009, Plaintiff was seen in Dr. Jarmon's office complaining of pain and weakness. R. 376. It was noted that Mobic alone was sufficient to take away the pain in Plaintiff's hip, neck, and knee joints. R. 376. Physical examination of Plaintiff's neck revealed point tenderness, and there was reduced range of motion in the hip joint. R. 376. Plaintiff also reported multiple somatic complaints, depression, and anxiety. R. 376.

On June 9, 2009, Plaintiff saw Dr. Jarmon for a gynecological examination. R. 375. On July 7, 2009, she returned for a follow-up of her lab results. R. 374. It was noted Plaintiff had been admitted to the hospital in June for rectal bleeding. R. 374. On August 4, 2009, Plaintiff was treated by Dr. Jarmon for symptoms of sinusitis. R. 373. The treatment note indicates Plaintiff's pain medication had been changed from Mobic to Ultram. R. 373. On August 25, 2009, Plaintiff was seen by Dr. Jarmon complaining of a

two to three day history of right face and ear pain. R. 384. She was diagnosed with sinusitis. R. 384.

## IV. DISCUSSION

### A.

Plaintiff argues that the ALJ only considered her physical capacity, and did not consider the effect pain would have on her ability to work. Pl.'s Br. 7. However, a review of the ALJ's decision shows that he properly considered Plaintiff's pain and its impact on her ability to work.

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If an ALJ discredits a claimant's subjective complaints, he must give "explicit and adequate reasons" for his decision. *See id.* at 1561-62. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562. The ALJ's credibility determination need not cite "particular phrases or formulations" as long as it enables the court to conclude that the ALJ considered Plaintiff's medical condition

as a whole. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (citing *Foote*, 67 F.3d at 1561).

In the present case, the ALJ set forth the Eleventh Circuit pain standard and proceeded to consider Plaintiff's allegations of pain and other subjective symptoms. R. 32. The ALJ found Plaintiff's "statements concerning her impairments and their impact on her ability to work [were] not fully credible in light of the medical history, the reports of examining practitioners, and the findings made on examination." R. 32. He found the medical record "included limited clinical studies" documenting Plaintiff's conditions. R. 32. The ALJ cited specifically the x-ray showing the "disc spaces of the cervical spine were preserved and facet relationships were normal." R. 32. The ALJ also noted the CT scan of Plaintiff's head, which "revealed a negative study with no abnormalities." R. 32.

The ALJ also found that contradictions in the record diminished Plaintiff's credibility. R 32. He found that Dr. Hakima's report that Plaintiff could not squat or bear weight on the left leg was contradicted by her finding of adequate muscle bulk, tone, and strength in Plaintiff's lower extremities. R. 33. The ALJ noted Plaintiff testified she was right-handed, but had reported to Dr. Hakima she was predominantly left-handed. R. 32-33. He also noted that Dr. Hakima's report included two different dates when Plaintiff alleged she quit working, August 2007 and November 2007. R. 33. He observed this was contrary to her testimony at her hearing that she last worked in 2008. R. 33.

Although the ALJ made credibility findings, he also found Plaintiff met neither the second nor the third prongs of the Eleventh Circuit pain standard. R. 33, 36. The ALJ

11

found that although Plaintiff had "underlying impairments capable of producing some pain and limitations, the evidence of record when considered as a whole, fails to corroborate the degree of disabling symptoms asserted or the degree of pain and restrictions alleged by [Plaintiff]." R. 33. He further found the "evidentiary record as a whole does not confirm, nor does it support, a conclusion that objectively determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling pain and other limitations." R. 33. In explaining these findings, the ALJ noted that none of Dr. Jarmon's treatment records "indicated that [Plaintiff] experienced pain or other subjective symptomology to such a degree as to render her totally disabled, and there are no treatment notes that placed such significant exertional, postural, or environmental restrictions on her that would preclude all forms of substantial gainful activity." R. 34. The ALJ also found it significant that Dr. Jarmon completed a food stamp form indicating Plaintiff was "mentally and physically capable of working and that the [Plaintiff's] conditions were not permanent." R. 34.

The ALJ applied the proper legal standard. He articulated the reasons why he found Plaintiff did not have objectively determined medical conditions of such severity that they could reasonably be expected to give rise to disabling pain and other limitations, and also why he found her allegations of disabling pain were not credible. These reasons are supported by substantial evidence. That evidence includes the only diagnostic imaging of Plaintiff's neck in the record, which shows Plaintiff's cervical disc space was preserved and that the facet relationships were normal. The treatment notes from Plaintiff's treating

physician, Dr. Jarmon, also support the ALJ's findings. Those records show Plaintiff received treatment on a number of occasions for routine problems when neck and shoulder pain were not mentioned. Dr. Jarmon's November 2008 opinion that Plaintiff was mentally and physically able to work supports the ALJ's finding that Plaintiff's symptoms were not as severe as she alleged. R. 381. Also, in June 2009, Plaintiff reported to Dr. Jarmon that her pain medications were sufficient to take away her pain. R. 376.

Plaintiff's longitudinal treatment history also supports the ALJ's findings. Despite allegations of disabling neck and left arm pain, Plaintiff did not seek treatment for those conditions from her alleged onset date, February 28, 2008, until April 29, 2008. R. 344. She next sought treatment on August 14, 2008, but complained only of numbness in the left side of two days duration. R. 351. When she first saw Dr. Jarmon on October 16, 2008, she reported she had not been on pain medications for a while. R. 383. The treatment notes from Dr. Jarmon show that after November 2008 Plaintiff sought treatment for routine conditions, such as sinusitis. However, the only treatment note after November 2008 that addressed Plaintiff's neck, back, or arm pain was on June 8, 2009, when it was noted her pain medications took away her pain. R. 376. Therefore, Plaintiff's longitudinal treatment history shows she sought treatment for her pain intermittently and that pain medications relieved her pain.

For the above reasons, the court finds the ALJ did not fail to properly consider Plaintiff's pain when assessing her RFC. His consideration of Plaintiff's subjective

allegations was in accordance with the Eleventh Circuit pain standard. The ALJ's findings are supported by substantial evidence and may not disturbed on appeal.

## B.

Plaintiff also argues, without elaboration, that the ALJ did not properly consider her pain allegations in accordance with SSR 96-7p. Pl.'s Br. 8. That Ruling sets forth a number of guidelines that are to be used in assessing a claimant's allegation of disabling symptoms. It provides that the consistency of the claimant's statements, both internally and with the other evidence of record, is a strong indication of credibility. SSR 96-7p, 1996 WL 374186, *5 (S.S.A.). It also states that a report of negative diagnostic findings is one of the factors to be considered in assessing a claimant's credibility. *Id.* at *6. The Ruling provides that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." *Id.* at *7. The ALJ properly considered these factors in assessing Plaintiff's credibility. Plaintiff has not shown the ALJ's consideration of her pain was not in accordance with the guidance provided by SSR 96-7p.

## C.

Plaintiff's final argument is that the ALJ did not consider all of her impairments in combination. Pl.'s Br. 9. A review of the ALJ's decision shows that he was aware of his obligation to consider Plaintiff's impairments in combination. The ALJ recognized this obligation in his consideration of whether Plaintiff had a "severe" impairment: "[T]he undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." R. 21. He also recognized

that Plaintiff's combined impairments must be considered in determining whether she meets a Listing, and that he "must consider all of the claimant's impairments, including impairments that are 'not severe'" in assessing Plaintiff's RFC. R. 22.

The ALJ's findings show that Plaintiff's impairments were considered in combination when he determined whether her impairments were severe. R. 29. In formulating his RFC assessment, the ALJ stated that all of Plaintiff's 'non-severe' impairments were considered in formulating her RFC. R. 30. He also specifically found Plaintiff did not have "an impairment or combination of impairments" that met or equaled a Listing. R. 36.

This is not a case such as *Walker v. Bowen*, where the ALJ did not mention many of the claimant's impairments. 826 F.2d 996, 1001 (11th Cir. 1987) (finding the ALJ did not consider the combination of claimant's impairments before determining her RFC where he made specific reference to only two impairments and failed to mention five other impairments except to find they did not establish disabling pain). In the present case, the ALJ considered all of Plaintiff's impairments in his discussion of the medical records. He found Plaintiff had "the 'severe' impairments of degenerative disk disease; rotator cuff disease; as suspected, and peripheral neuropathy of left shoulder." R. 29. He also found Plaintiff had the "nonsevere" impairments of "hypertension, depression, and panic attacks." R. 29. He stated that these "nonsevere" impairments were considered in assessing Plaintiff's RFC. R. 30. The ALJ discussed all of Plaintiff's impairments and considered their combined effect in assessing Plaintiff's RFC. Therefore, he did not fail to properly

consider Plaintiff's impairments in combination. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (finding the ALJ considered the claimant's combined impairments because of his lengthy consideration of those conditions and his well articulated findings as to their effect on the claimant).

## V.  CONCLUSION

The court concludes the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final decision is due to be affirmed. An appropriate order will be entered.

**DONE** and **ORDERED** this the 18th day of December, 2013.

 

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge